DEREK E. WETMORE (SB# 291600)
derekwetmore@paulhastings.com
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, CA 94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100

*Attorneys for Defendants*
*Dave Inc. and Evolve Bank & Trust*

*Additional Counsel for Defendants*
*listed on next page*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Michael Russell, Joseph Preston, and James Tosches, individually, on behalf of all others similarly situated, and on behalf of the general public, | CASE NO. 2:25-cv-04029-MRA-MBKx |
| Plaintiffs, | **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF** |
| vs. | |
| Dave Inc. and Evolve Bank & Trust, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | Date:  October 20, 2025<br>Time:  1:30 p.m.<br>Dept.:  9B<br>Judge: Hon. Mónica Ramírez Almadani<br>Magistrate Judge: Michael B. Kaufman |

ALLYSON BAKER (*pro hac vice*)
allysonbaker@paulhastings.com
MEREDITH BOYLAN (*pro hac vice*)
meredithboylan@paulhastings.com
PAUL HASTINGS LLP
2050 M Street, NW
Washington, DC 20036
Telephone: (202) 551-1700
Facsimile: (202) 551-1705

MARGARET SHIELDS (*pro hac vice*)
margaretshields@paulhastings.com
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6334
Facsimile: (212) 319 4090

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN
FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   ARGUMENT ......................................................................................................1

    A.   The Court Should Compel Arbitration .....................................................1

        1.   MLA does not govern Dave's Terms of Service—which are separate from Evolve's ExtraCash Account Agreement—or invalidate the arbitration provisions or delegation clause therein. ...................................................2

        2.   Even if MLA did cover Dave's Terms of Service, the Arbitration Provision therein does not violate MLA because it contains an opt-out clause...........................4

        3.   Steines is inapplicable, and thus Steines does not separately prohibit an arbitrator from deciding arbitrability. ..........................................................5

    B.   Even if the Court Finds that MLA Theoretically Bars Arbitration for Covered Members and Their Dependents, Plaintiffs Have not Alleged that ExtraCash is Subject to MLA. ......................................6

        1.   Overdraft fees are statutorily exempt. .......................6

        2.   Optional tips and expedited transfer fees are not finance charges. ...................................................11

        3.   Plaintiffs don't come close to showing that subscription fees are finance charges. ..........................................14

    C.   Plaintiffs Have Not Plausibly Alleged that Defendants are "Creditors" Under TILA. ...............................................15

    D.   Plaintiffs' All-Or-Nothing Arbitration Argument Misstates the Law; Even if the Court Declines to Order Arbitration of MLA Claims, Any Surviving TILA or PLA Claims Should be Compelled to Arbitration. .........................................16

    E.   If the Court Declines to Compel the PLA Claim to Arbitration, the Court Should Dismiss It, Because Plaintiffs do not State a Claim. ..........................................................17

III.  CONCLUSION .................................................................................................19

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN
FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Acevedo-Garcia v. Monroig,*
351 F.3d 547 (1st Cir. 2003) ............................................................................... 16

*Alexander v. Carrington Mortg. Servs., LLC,*
23 F.4th 370 (4th Cir. 2022) ............................................................................... 14

*Caraco Pharm. Lab's, Ltd. v. Novo Nordisk A/S,*
566 U.S. 399 (2012) ............................................................................................ 10

*CFPB v. MoneyLion Techs. Inc.,*
No. 22 CIV. 8308 (JPC), 2025 WL 893684 (S.D.N.Y. Mar. 24,
2025) ............................................................................................................. 4, 5, 14

*Cooper v. Ruane Cunniff & Goldfarb Inc.,*
No. 16-900-WHP, 2017 WL 3524682 (S.D.N.Y. Aug. 15, 2017),
*rev'd on other grounds*, 990 F.3d 173 (2d Cir. 2021) .......................................... 4

*Corley v. United States,*
556 U.S. 303 (2009) .............................................................................................. 5

*Davis v. Nordstrom, Inc.,*
755 F.3d 1089 (9th Cir. 2014) .............................................................................. 1

*Dean Witter Reynolds, Inc. v. Byrd,*
470 U.S. 213 (1985) ............................................................................................ 17

*Epic Sys. Corp. v. Lewis,*
584 U.S. 497 (2018) .............................................................................................. 3

*Espin v. Citibank,*
22 CV 383, Dkt. No. 1 (E.D.N.C. September 22, 2022) ..................................... 17

*Espin v. Citibank, N.A.,*
126 F.4th 1010 (4th Cir. 2025) ..................................................................... 16, 17

*Ford Motor Credit Co. v. Milhollin,*
444 U.S. 555 (1980) ............................................................................................ 10

*Garrett v. Monterey Fin. Servs.,*
LLC, No.JKB-18-325, 2018 WL 3579856 (D. Md. July 25, 2018).....................4

*Glover v. Ocwen Loan Servicing, LLC,*
127 F.4th 1278 (11th Cir. 2025).......................................................................14

*Golubiewski v. Activehours, Inc.,*
No. 3:22-CV-02078, 2025 U.S. Dist. LEXIS 167308 (M.D. Pa.
Aug. 28, 2025) ........................................................................................... 10, 11

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
586 U.S. 63 (2019) ........................................................................................2, 4

*Household Credit Servs., Inc. v. Pfennig,*
541 U.S. 232, 124 S. Ct. 1741(2004) .................................................................12

*Johnson v. Activehours, Inc.,*
No. 1:24-cv-2283, 2025 WL 2299425 (D. Md. Aug. 8, 2025) ............. 10, 11, 13

*Locricchio v. Office of the United States Trustee (In re Pers. Elec.
Transps., Inc.),*
313 Fed. Appx. 51 (9th Cir. 2009) .....................................................................6

*Moss v. Cleo AI Inc.,*
Case No. 2:25-cv-00879-MLP, 2025 WL 2592265 (W.D. Wash.
Sept. 8, 2025)....................................................................... 10, 11, 13, 17

*New Prime Inc. v. Olivera,*
586 U.S. 105 (2019) ..........................................................................................3

*Orubo v. Activehours, Inc.,*
780 F. Supp. 3d 927 (N.D. Cal. 2025)...............................................10, 11, 12, 13

*Rent-A-Center, West, Inc. v. Jackson,*
561 U.S. 63 (2010) .........................................................................................2, 3

*Steines v. Westgate Palace, L.L.C.,*
113 F.4th 1335 (11th Cir. 2024)......................................................................5, 6

*SunTrust Bank v. Bickerstaff,*
913 S.E.2d 51 (Ga. Ct. App. 2025) ..................................................................18

*Synovus Bank v. Griner,*
739 S.E.2d 504 (Ga. Ct. App. 2013) .................................................................18

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR
OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

*Synovus Bank v. Griner*,
No. S13C1264, 2013 Ga. LEXIS 838 (Oct. 7, 2013) ........................................... 18

*Tribble v. State*,
597, 80 S.E.2d 711 (Ga. Ct. App. 1954) ............................................................ 18

*Veale v. Citibank, F.S.B.*,
85 F.3d 577 (11th Cir. 1996) ............................................................................. 12

*In Re Washington Mutual Overdraft Protection*,
539 F. Supp. 2d at 1147 (2008) ........................................................................ 8, 9

**Federal Statutes**

Federal Debt Collection Practices Act ................................................................ 14

Georgia Payday Loan Act, O.C.G.A. § 16-17-2, *et seq*. ................................ *passim*

Military Lending Act, 10 U.S.C § 987 *et seq*. ............................................... *passim*

Truth in Lending Act, 15 U.S.C. § 1601, *et seq*. ........................................... *passim*

**Rules and Regulations**

Truth in Lending (Regulation Z), 12 C.F.R. 1026 ................................. 6, 11, 13, 14

89 Fed. Reg. 106768 (Dec. 30, 2024) .................................................................. 7

68 Fed. Reg. 16185, 16186-88 (Apr. 3, 2003) (codified at 12 C.F.R. pt.
226) ............................................................................................................... 11, 13

61 Fed. Reg. 49237 (Sept. 13, 1996) .................................................................. 13

32 C.F.R. 232 ................................................................................................ 13, 14

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 19

**Other Authorities**

Comptroller's Handbook, Deposit-Related Credit (Version 3.0, March
2020), https://www.occ.gov/publications-and-
resources/publications/comptrollers-handbook/files/deposit-related-
credit/pub-ch-deposit-related-credit.pdf. ............................................................. 9

Ga. Att'y Gen., Unofficial Opinion, U2024-1 (Dec. 6, 2024),
https://law.georgia.gov/opinions/u2024-1 ........................................................... 19

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR
OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

Defense Department Report Shows Decline in Armed Forces
   Population While Percentage of Military Women Rises Slightly,
   Department of Defense, Nov. 6, 2023,
   https://www.war.gov/News/Releases/Release/article/3580676/defen
   se-department-report-shows-decline-in-armed-forces-population-
   while-percen/ (last accessed, Sept. 11, 2025)......................................................16

*Necessary*, Black's Law Dictionary (12th ed. 2024) ...............................................12

Population Under Age 18 Declined Last Decade, U.S. Census Bureau,
   Aug. 12, 2021,
   https://www.census.gov/library/stories/2021/08/united-states-adult-
   population-grew-faster-than-nations-total-population-from-2010-to-
   2020.html (last accessed, Sept. 11, 2025) ...........................................................16

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR
OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

## I.  **<u>INTRODUCTION</u>**

Defendants respectfully submit this reply in support of their Motion to Compel Arbitration, or for Alternative Relief ("Mot.").  Plaintiffs Specialist Michael Russell, Private First Class Joseph Preston, and Staff Sergeant James Tosches agreed to arbitrate all disputes with Defendants, including their claims relating to Dave's historic optional fees.[1]  Plaintiffs' Military Lending Act claim, 10 U.S.C § 987, *et seq.*, ("MLA"), does not undo this agreement.  Their claims under the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, ("TILA") and the Georgia Payday Loan Act ("PLA"), O.C.G.A. § 16-17-2, *et seq*. also must be arbitrated.

Plaintiffs wrongly argue that MLA imposes a blanket ban on arbitration, notwithstanding their voluntary decision to arbitrate all claims relating to Dave's services, and notwithstanding their separate agreement to delegate to an arbitrator any decisions regarding the validity of the arbitration agreement.  Plaintiffs also ignore the clear regulatory text confirming that MLA does not apply here: discretionary overdraft services like ExtraCash are not subject to TILA and MLA.  Guidance in Georgia is similarly clear: none of Defendants' fees render ExtraCash subject to PLA.  Plaintiffs rely instead to a line of recent decisions involving earned wage access ("EWA") products, not discretionary overdraft products like ExtraCash.  Those decisions are distinguishable and also erroneous.

## II.  **<u>ARGUMENT</u>**

### A.  **<u>The Court Should Compel Arbitration</u>**

Plaintiffs ask the Court to ignore the "'liberal federal policy' in favor of arbitration." *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092 (9th Cir. 2014) (quoting

---

[1] In late 2024, Dave transitioned new users to a simplified mandatory fee structure that eliminates optional tips and the then-existing express fees for ExtraCash.  Am. Compl. ¶ 64.  *See also* Dave Inc.'s Form 8-K, Ex. 99.1 (Dec. 31, 2024), https://www.sec.gov/Archives/edgar/data/1841408/000119312524287056/d888866d8k.htm.  All existing Dave users transitioned to the new fee structure by February 19, 2025.  *See* Dave Inc.'s Form 8-K, Ex. 99.1 (Feb. 20, 2025), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001841408/000119312525030195/d836526d8k.htm.

MEM. P. & A. ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 346 (2011)). But Supreme Court precedent is clear: where, as here, the parties delegate to the arbitrator the power to decide gateway arbitrability issues—such as the validity and enforceability of the arbitration agreement—the district court "***may not*** decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (emphasis added).

> 1.    *MLA does not govern Dave's Terms of Service—which are separate from Evolve's ExtraCash Account Agreement—or invalidate the arbitration provisions or delegation clause therein.*

As the Supreme Court has explained numerous times, an agreement to have an arbitrator decide what issues are subject to arbitration is an "additional, antecedent agreement" to other issues in a contract. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010); *Henry Schein*, 586 U.S. at 68. Thus, even if, *arguendo*, Defendants' services involved an extension of credit, it does not follow that MLA would govern the Plaintiffs' *separate* agreement on delegation. *See Rent-A-Ctr.*, 561 U.S. at 72 (it "makes no difference" whether a delegation clause appears in a contract with other subject matter or in a standalone arbitration agreement).

Dave's Terms of Service—which apply to every Dave user, whether or not they later sign up for ExtraCash, and which Plaintiffs invoke in the Complaint's Jurisdictional Statement (Am. Compl. ¶ 24)—include an arbitration provision (Dkt. No. 44-2). And the delegation provision in Dave's Terms of Service clearly states that the parties agree "that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration," including for claims as to "the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement." Dkt. No. 44-2 at 15–16.

Nevertheless, Plaintiffs misconstrue the law to argue that MLA displaces the FAA, and it therefore overrides the separate delegation agreement to which the

Plaintiffs agreed. *First*, neither of the Supreme Court cases Plaintiffs cite, *New Prime Inc. v. Olivera*, 586 U.S. 105 (2019) or *Epic Sys. Corp. v. Lewis*, 584 U.S. 497 (2018), involves MLA. Indeed, *New Prime* involved an employment contract that is specifically excluded by Section 1 of the FAA. 586 U.S. at 108. There is no equivalent carve-out in the FAA that applies under the facts alleged here. While the court in *Epic Systems* mentions MLA's declaration that "requiring a party to arbitrate is 'unlawful' in other circumstances," *Epic Sys. Corp.*, 584 U.S. at 514, this does not mean, as Plaintiffs claim, that "MLA [is] the paradigmatic example of a federal statute that clearly displaces the FAA." Opp'n at 6. As discussed *infra*, the Dave Terms of Service provide 60 days to opt-out of arbitration. Plaintiffs chose not to opt-out. Thus, because Plaintiffs were not required to arbitrate, the MLA provision cited in *Epic Systems* is not implicated here; *Epic Systems* is distinguishable.

Plaintiffs cite *Rent-A-Center* for the proposition that, when a party challenges the agreement to arbitrate, a federal court (and not an arbitrator) must consider that challenge. But Plaintiffs ignore *Rent-A-Center*'s treatment of delegation provisions. In *Rent-A-Center*, the court recognized that a delegation clause was a severable agreement that should be treated as separate from the arbitration clause. A party challenging the efficacy of a delegation clause must separately and specifically assert that the delegation provision is, independently, invalid. 561 U.S. at 64 ("Because here the agreement to arbitrate enforceability (the delegation provision) is severable from the remainder of the Agreement, unless [plaintiff] challenged the delegation provision specifically, it must be treated as valid."). Plaintiffs have not alleged any basis to invalidate the delegation clause in Dave's Terms of Service. In fact, Plaintiffs' challenge is directed at amorphous "consumer credit agreements," without mentioning any operative agreement in particular.[2] Dave's Terms of Service control.

---

[2] *See* Opp'n at 8. Plaintiffs argue the "MLA Applies to Defendants' Agreements" because they allegedly are consumer credit agreements subject to a finance charge.

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

And pursuant to the Terms of Service, an arbitrator—and not the Court— should rule on arbitrability. *See Henry Schein*, 586 U.S. at 69.

To Plaintiffs, merely invoking MLA is sufficient to bar arbitration. That is not the law, and their argument ignores (1) Plaintiffs' choices not to opt-out of arbitration; (2) the presence of a separate delegation clause; (3) that Plaintiffs' other federal and state claims do not implicate MLA, and (4) that Plaintiffs seek to represent TILA and PLA classes that would indisputably include individuals who are not covered by MLA. MLA is not nearly so powerful as to overcome all this. And Plaintiffs offer no support to suggest otherwise.

> 2. *Even if MLA did cover Dave's Terms of Service, the Arbitration Provision therein does not violate MLA because it contains an opt-out clause.*

Optional arbitration clauses are not covered by MLA's prohibition on arbitration. Section 987(e)(3) addresses scenarios where "the creditor *requires* the borrower to submit to arbitration . . . ." Section 987(e)(3) does not apply here. Plaintiffs and the putative classes were not required to submit to arbitration to resolve claims involving Dave's services and activities: they had 60 days to opt out. *See CFPB v. MoneyLion Techs. Inc.*, No. 22 CIV. 8308 (JPC), 2025 WL 893684, at *25 (S.D.N.Y. Mar. 24, 2025) (holding that MLA only prohibits mandatory arbitration agreements and that arbitration agreements including opt-out provisions are not mandatory); *Garrett v. Monterey Fin. Servs.*, LLC, No.JKB-18-325, 2018 WL 3579856, at *4 (D. Md. July 25, 2018) (same). *See also Cooper v. Ruane Cunniff & Goldfarb Inc.*, No. 16-900-WHP, 2017 WL 3524682, at *8 (S.D.N.Y. Aug. 15, 2017), *rev'd on other grounds*, 990 F.3d 173 (2d Cir. 2021) (noting the arbitration agreement was "entirely voluntary" where all employees had a 30-day period to opt-out).

Plaintiffs leap over Section 987(e)(3) to MLA's "Penalties and Remedies" provision, Section 987(f)(4), which states that "no agreement to arbitrate any dispute involving the extension of consumer credit shall be enforceable . . . ." This is

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

improper. The Supreme Court teaches in *Corley v. United States*, 556 U.S. 303, 314 (2009), that courts should construe statutes as a whole, "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." Plaintiffs' proposed interpretation of MLA would render inoperative MLA's structure, effectively rewriting MLA to install Section 987(f)(4) as a standalone provision, rather than a subsection of the "Penalties and Remedies" section. It would also render superfluous Section 987(e)(3)'s prohibition on mandatory arbitration provisions—Section 987(e)(3)'s prohibition on *mandatory* arbitration clauses is dead letter if *all* agreements to arbitrate are prohibited by Section 987(f)(4).

Because Section 987(f)(4) is only available as a remedy, and is not a standalone violation, Plaintiffs would have to *prove* a violation of the MLA to obtain the remedy provided in Section 987(f)(4). Plaintiffs cannot get the benefit of Section 987(f)(4) simply by *alleging* a violation of the MLA. If that were true, Plaintiffs would be entitled to all the other remedies listed in Section 987(f), including civil penalties, simply by surviving a motion to dismiss the complaint.

> **3.** **Steines** *is inapplicable, and thus* Steines *does not separately prohibit an arbitrator from deciding arbitrability.*

Plaintiffs lean on *Steines v. Westgate Palace, L.L.C.*, 113 F.4th 1335 (11th Cir. 2024) to support their claim that MLA prohibits even the arbitrability question from being sent to arbitration with respect to any covered member or their dependent. But the *Steines* decision did not analyze whether an arbitration agreement that offers an "opt-out" provision—like the one here—is not "mandatory" and therefore does not violate MLA. *See supra*. *See also MoneyLion*, 2025 WL 893684, at *25 (noting the court finds "no [] basis for reading Section 987(e)(3), contrary to its plain meaning, to cover arbitration clauses with opt-out provisions"). And the "clearly expressed intention" that *Steines* relies on to support its contention that MLA overrides the FAA is that MLA states it "'shall be unlawful for any creditor to extend consumer credit' to a servicemember where 'the creditor ***requires*** the borrower to submit to arbitration.'"

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

10 U.S.C. § 987(e)(3). This is a clearly expressed intention to supersede the FAA, and thus render any mandatory arbitration agreement nugatory." *Steines*, 113 F.4th at 1343 (emphasis added). *Steines* does not apply if a consumer is permitted to opt out of an arbitration provision rather than "require[d] … to submit to arbitration." *Id*. And, because Dave's Terms of Service do not require Plaintiffs to submit to arbitration, *Steines* does not apply here.

Lastly, Plaintiffs do not dispute that they agreed to the Terms of Service, or to the arbitration clause, or that the disagreement falls within the scope of the arbitration clause. Plaintiffs have therefore waived those arguments. *See Locricchio v. Office of the United States Trustee (In re Pers. Elec. Transps., Inc.)*, 313 Fed. Appx. 51, 52 (9th Cir. 2009) (an argument is waived when not raised in the opposition to a motion to dismiss).

Because Dave's Terms of Service do not violate MLA, the arbitration provision is valid and should be enforced.

**B.** **Even if the Court Finds that MLA Theoretically Bars Arbitration for Covered Members and Their Dependents, Plaintiffs Have not Alleged that ExtraCash is Subject to MLA.**

The Complaint alleges that Defendants assess four "finance charges" that render ExtraCash subject to MLA: (1) overdraft fees; (2) optional expedited transfer fees; (3) optional tips; and (4) subscription fees. None of these are finance charges. And without finance charges, Plaintiffs' consumer credit allegations fail as a matter of law.

*1.     Overdraft fees are statutorily exempt.*

Overdraft fees for discretionary overdraft services are not finance charges pursuant to a statutory exemption from Regulation Z's definition of "finance charge." 12 CFR 1026.4(c)(3). Because ExtraCash is a discretionary overdraft product, the

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

overdraft fees assessed to ExtraCash users are not finance charges and cannot support Plaintiffs' MLA (or TILA) claims.[3]

To avoid the impact of this clear statutory exemption, Plaintiffs argue that ExtraCash is not, in fact, a discretionary overdraft service. For their first swing, Plaintiffs contend that ExtraCash is not an overdraft because, according to guidance, "[a]n overdraft occurs when consumers do not have a sufficient balance in their asset account to pay a transaction, but the financial institution pays the transaction anyway." 89 Fed. Reg. 106768, 106769 (Dec. 30, 2024). The problem with Plaintiffs' argument is that this is exactly what ExtraCash does. ExtraCash users are required to maintain a demand deposit account ("DDA"), which is a checking account offered through a bank partner—in this case, Evolve, who Plaintiffs named in their Complaint. The DDA allows users to hold funds, make transfers, and receive transfers from outside accounts. Dkt. No. 44-4 at 49. When a user requests an ExtraCash advance, Evolve, in its discretion, may (or may not) permit the user to overdraw their ExtraCash DDA.[4] *Id*. at 48, 55.[5] ExtraCash is a paradigmatic example of the discretionary overdraft guidance Plaintiffs cite.[6]

"[O]verdraft credit must technically be discretionary to be excepted from Regulation Z." 89 Fed. Reg. 106768, 106770. This includes situations "where the financial institution typically pays overdrafts up to certain limits but does not agree in advance to pay the overdrawn transactions, reserving discretion to decline any given overdraft transaction." *Id*. Regulation Z—like the other guidance Plaintiffs

---

[3] We are not aware of any actions brought by the Consumer Financial Protection Bureau or Federal Trade Commission alleging that overdraft services like ExtraCash violate TILA.

[4] Plaintiffs acknowledge that discretionary overdrafts can be beneficial to consumers. Opp'n at 10.

[5] Plaintiffs also argue that the overdraft exemption only applies to DDA accounts. The accounts at issue here are undisputably DDA accounts.

[6] As a last gasp, Plaintiffs ask the Court to rely on the American Banking Association's ("ABA") definition of "overdraft." Opp'n at 11. The ABA is not a self-regulatory organization, let alone a governmental entity. It is a trade association. The ABA's imprecise definition, which blurs the distinction between overdraft protection and overdraft lines of credit under TILA, has no legal authority. TILA and Regulation Z control.

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

cite—describes ExtraCash to a tee, and Regulation Z exempts discretionary overdraft fees.

Plaintiffs also ignore the court's analysis *In Re Washington Mutual Overdraft Protection* ("*Washington Mutual*"), which is directly on point. 539 F. Supp. 2d 1136, 1147 (C.D. Cal. 2008). In *Washington Mutual*, the checking account agreement stated: "Defendant is not obligated to pay overdrafts and may terminate or reduce the Overdraft Limit at any time." *Id*. at 1143. The court noted: "the plain language of the Account Disclosures makes it clear that Defendant retained discretion whether to pay overdrafts, and that the Account Disclosures did not legally bind Defendant to pay overdrafts." *Id*. at 1149. The plain language of the ExtraCash Account Agreement is on all-fours with the discretionary example presented in *Washington Mutual*, stating: "we ***may*** approve electronic fund transfers that you request even if you do not have sufficient funds in your ExtraCash account for the transfer" and "[y]our Advance Limit is determined by us ***in our sole discretion*** . . . Your Advance Limit may be increased or decreased at any time." Dkt. No. 44-4 at 56 (emphasis added). Indeed, Plaintiffs allege that ExtraCash overdrafts are not guaranteed to be paid, and "[n]ot all members qualify for ExtraCash and few qualify for $500." Am. Compl. ⁋ 119. The overdraft provisions described in *Washington Mutual* and those in the ExtraCash Account Agreements are consistent. The only possible conclusion is that ExtraCash is a discretionary overdraft service, thus its overdraft fees are exempt under Regulation Z.

Taking its second swing, Plaintiffs acknowledge that ExtraCash may be an overdraft product, but argue that it is an overdraft line of credit, not a discretionary overdraft service. A look at regulatory guidance disproves Plaintiffs' suggestion. The Office of the Comptroller of the Currency ("OCC") describes an overdraft line of credit as follows:

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

> The bank automatically transfers funds from an existing line of credit to the customer's demand deposit account when a check or payment is presented that would cause the customer's account to be overdrawn. Transfers normally are made in stated increments, up to a bank-approved maximum line of credit, and the customer is notified that the funds have been transferred.

In contrast, OCC describes overdraft protection (discretionary overdraft) as offering "automated services provided to transaction account customers as alternatives to a traditional overdraft line of credit . . . Many banks inform customers that payment of an overdraft is discretionary on the banks' part, and deposit account agreements typically disclose that the banks have no legal obligation to pay any overdrafts." Comptroller's Handbook, Deposit-Related Credit (Version 3.0, March 2020);[7] *see also Washington Mutual*, 539 F. Supp. 2d at 1150 (noting that the bank's overdraft line of credit agreement was a "separate, independent, formal agreement with extensive terms setting forth a 'credit limit' and finance charges, and including blanks for the 'borrower's' identifying information and in which the 'borrower' must execute the agreement."). ExtraCash clearly falls in the "discretionary" category—it does not enter into line of credit agreements with customers and Defendants have no legal obligation to pay any particular overdraft.

For its third and final swing, Plaintiffs ask the court to forgo statutory and regulatory guidance altogether in favor of a subjective test, which purports to assess whether the service "feels" like credit. But there is no ex-post subjectivity in the analysis of whether something is an "overdraft" under TILA, and thus MLA. A product either fits the regulatory definition, or it does not. There is no basis for a court to inject subjectivity into a regulatory scheme that eschews ad hoc product evaluation. Interpreting TILA and Regulation Z subjectively would render TILA compliance untenable, which flies in the face of regulatory guidance establishing a

---

[7]https://www.occ.gov/publications-and-resources/publications/comptrollers-handbook/files/deposit-related-credit/pub-ch-deposit-related-credit.pdf.

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

good faith compliance safe harbor whose purpose is "to relieve the creditor of the burden of choosing 'between the Board's construction of the Act and the creditor's own assessment of how a court may interpret the Act.'" *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566 (1980).  "Creditors need sure guidance through the 'highly technical' Truth in Lending Act." *Id*.  Companies cannot be left guessing about their TILA obligations based on whether a court will later determine that their particular overdraft product fails some ill-defined subjective test.

   *Orubo v. Activehours, Inc.*, 780 F. Supp. 3d 927 (N.D. Cal. 2025), on which so much of Plaintiffs' Opposition relies, does not hold otherwise.  As a starting point, *Orubo* addressed non-recourse EWAs; ExtraCash is not an Earned Wage Access service.  It is a discretionary overdraft service accessible for Dave users with DDAs offered by Dave's banking partner, Evolve.  Neither *Orubo*, nor *Johnson v. Activehours, Inc.*, No. 1:24-cv-2283, 2025 WL 2299425, at *8 (D. Md. Aug. 8, 2025), nor *Moss v. Cleo AI Inc.*, Case No. 2:25-cv-00879-MLP, 2025 WL 2592265 (W.D. Wash. Sept. 8, 2025),[8] included consideration of the clear statutory exemption for discretionary overdraft services, as applies here.

   The Supreme Court teaches that courts should "begin where all [statutory interpretation] inquiries must begin: with the language of the statute itself." *Caraco Pharm. Lab's, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 412 (2012).  Here, the text of the regulations is clear—overdraft fees for discretionary overdraft services, like ExtraCash, are not finance charges.

---

[8] Nor does *Golubiewski v. Activehours, Inc.*, No. 3:22-CV-02078, 2025 U.S. Dist. LEXIS 167308, at *17-18 (M.D. Pa. Aug. 28, 2025).  Plaintiffs argue in their Notice of Supplemental Authority, Dkt. No. 50, that *Moss* is comparable to the present case.  *Moss* is distinguishable for all the same reasons as *Orubo*.

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

> 2.     *Optional tips and expedited transfer fees are not finance charges.*

Plaintiffs rely almost exclusively on *Orubo* and *Johnson* to argue that optional tips and optional expedited transfer fees are finance charges.  But this reliance is misplaced.

*First*, as noted above, *Orubo* and its progeny involve fundamentally different products.  EarnIn (*Orubo*, *Golubiewski*, and *Johnson*), and Cleo (*Moss*) offer non-recourse EWA services.  ExtraCash users have access to a discretionary overdraft service.  *See supra.*

*Second*, in articulating a subjective test, the *Orubo* decision eschews binding regulatory guidance.  The cases that have recently followed *Orubo* are the fruit of this poisonous tree.  Years ago, the Board considered whether similar expedite fees—a fee to make an expedited repayment and a fee to expedite delivery of a credit card—were incidental to or a condition of credit.  The Board determined that they are not, *see* 12 C.F.R. pt. 1026, Supp. I ¶¶ 6(a)(2)-2(ix)-(x), reasoning that because consumers had free alternatives, such fees were not "incidental to the extension of credit."  *See* Truth in Lending, 68 Fed. Reg. 16185, 16186-88 (Apr. 3, 2003) (codified at 12 C.F.R. pt. 226).  It is simply not possible to reconcile *Orubo*'s holding that expedite fees are "finance charges" with guidance offered by the regulator then responsible for implementing TILA.[9]  The inquiry should stop with the Board's guidance.  The relevant regulator has already weighed in on what "incident to" means, and it has determined that expediting fees are not "incidental" to credit where there are free alternatives, as there are here.  The Court should follow this reasoning, not *Orubo*.

*Third,* Plaintiffs argue that ExtraCash's optional expedited transfer fees and tips are "finance charges" because they have a "necessary connection" to ExtraCash

---

[9] Plaintiffs attempt to distinguish ExtraCash from the credit card transactions in the Board rule. Opp'n at 20.  But that argument is a red herring.  The credit card transactions are clearly credit, yet the board still determined the expediting fees were not "finance charges."

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

advances and are thus "incident to" a credit transaction. Opp'n at 15; *see also Orubo*, 2025 WL 1257695, at *6 (holding that "incident to" means a "necessary connection" between the fee and the loan) (citing *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 124 S. Ct. 1741(2004)). [10] This argument fails. "Necessary" means "essential" or "that must exist or happen and cannot be avoided; inevitable." *Necessary*, Black's Law Dictionary (12th ed. 2024). Plaintiffs, and the decisions they cite, have ignored the operative word "necessary." As a factual matter, there is no "*necessary* connection" where customers receive the same product regardless of whether or not they choose to pay optional expedited transfer fees or tips, just as Plaintiffs did. [11]

*Fourth*, both Plaintiffs and *Orubo* and its progeny erroneously rely on a 1996 Board rule explaining that fees for an entirely *different* product (debt cancellation products) are finance charges. *See* Opp'n at 18 (citing 61 Fed. Reg. 49237, 49239 (Sept. 19, 1996)). Debt cancellation products are not at issue here, and they are not comparable to ExtraCash. Although *Orubo* and Plaintiffs cite this irrelevant guidance, the applicable standard is that applied by the Board: optional fees to expedite transactions are not incidental to the extension of credit. *See supra*.

*Fifth*, *Orubo* and its progeny completely ignore *Veale v. Citibank, F.S.B.*, 85 F.3d 577, 579 (11th Cir. 1996), which is on point and persuasively addresses the facts here. Plaintiffs attempt to argue that there are essentially two versions of ExtraCash, because (according to Plaintiffs) instant access requires paying an optional expedited transfer fee. But *Veale* correctly understands that the option for expedited delivery does not transform one product into two; it simply means that a product can be

---

[10] *Pfennig* involved an over-limit fee. The court determined this was a fee "imposed . . . as a penalty for violating the credit agreement." 541 U.S. at 240. No such connection between the fee and the credit exists here.

[11] Historically, when ExtraCash included a tipping feature, customers were only able add a tip *after* they were approved for an overdraft. Mot. 5, n. 7 (citing Am. Compl. ¶ 84 (showing that tip screen appears after "Your advance is on its way!")). Neither the users' eligibility for an overdraft nor the amount of the overdraft offered to users were affected by the users' *subsequent* decision to leave—or not leave—a tip.

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

delivered more quickly if the user chooses. This is akin to a delivery that can arrive in one business day rather than several business days if the purchaser elects expedited shipping—the goods are the same and arrive either way. *See also* 68 Fed. Reg. 16185, 16186-88 ("Card issuers increasingly have been making expedited payment services available to consumers. The expedited payment service provides consumers an alternative to mailing a payment that might not reach the card issuer by the due date. Typically to avoid being assessed a late fee, consumers request expedited payment service for a lesser charge."). Moreover, Plaintiffs' argument fails because Dave offers instant access to funds transferred to a Dave checking account. *See* Dkt. No. 44-14. Consumers can get instant access whether or not they pay an optional expedited transfer fee.

*Sixth*, *Orubo*, *Johnson*, and *Moss* all fail to address that charges assessed in comparable cash transactions are not "finance charges."[12] The official interpretation to Regulation Z explains that "[c]harges imposed uniformly in cash and credit transactions are not finance charges" and that the appropriate test to determine whether a charge qualifies for the comparable cash transaction exclusion involves "compar[ing] charges with those payable in a similar cash transaction by the seller of the property or service." 12 C.F.R. § 1026 Supp. I ¶ 4(a)(1). Here, for example, Defendants assess the same optional expedited transfer fees for moving funds between a user's DDA and the user's external accounts, whether or not the funds being transferred originate as an overdraft. Dkt. No. 44-5 at 92; Mot. at 15 n. 22. Not surprisingly, the Board determined that "most voluntary fees" are excluded as finance charges under the exclusion for charges that are payable in a comparable cash transaction.[13]

[12] "The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. *It does not include any charge of a type payable in a comparable cash transaction*." 12 C.F.R. § 1026.4(a) (emphasis added).

[13] *See* Truth in Lending; 61 Fed. Reg. 49237, 49239. Because "finance charge" is defined in MLA in reference to the TILA definition provided under Regulation Z, *see* 32 C.F.R. § 232.3(n),

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

*Seventh*, Plaintiffs attempt to rely on inapplicable dicta in a line of cases interpreting the Federal Debt Collection Practices Act ("FDCPA"). While the FDCPA also includes the term "incident to," courts have interpreted the relevant provision of the FDCPA to apply to "all" amounts charged—not just charges that are "incidental." *See Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 376, 377 n.2 (4th Cir. 2022) (determining the court did not need to reach the issue of whether fees are "incidental" because the statute covers "all" amounts); *Glover v. Ocwen Loan Servicing, LLC*, 127 F.4th 1278, 1283 (11th Cir. 2025) ("any amount" is not limited only to amounts "incidental to the principal obligation."). Since the FDCPA cases do not turn on the meaning of "incident to," they are inapplicable here.

### 3. *Plaintiffs don't come close to showing that subscription fees are finance charges.*

Dave's monthly subscription fee is specifically excluded as a "participation fee" from the definition of "finance charge" under 12 CFR 1026.4(c)(4). *See* Mot at 17. Plaintiff may not like this carve out—or the overdraft fee exemption—but it is the law. And it applies to MLA, as well, because the Department of Defense, to which Congress delegated MLA rulemaking authority, adopted the Regulation Z definition of "finance charge," exclusions and all. 32 C.F.R. 232.3(n). Plaintiffs' suggestion that under MLA, all "interest" is a "finance charge," Opp'n at 16, is simply wrong.[14]

Plaintiffs also ignore that subscription fees are exempt under the comparable cash transaction exemption. *See supra*. Dave users receive access to a host of services when they subscribe to Dave. Mot. at 18. Some Dave users choose to open an ExtraCash DDA, which facilitates the transfer of cash funds. Others do not. Some

---

including interpretations issued by an official or duly authorized employee, *see id.* § 232.3(s), the Board's ruling-making likewise applies here.

[14] Even the case Plaintiffs cite, *MoneyLion*, 2025 WL 893684, at *13, acknowledges that the terms "finance charge" and "MAPR" are separate. A product is only "consumer credit" subject to MLA if it constitutes "credit" subject to a "finance charge." *See* 32 C.F.R. §§ 232.2(a)(1), 232.3(f)(1). Neither the "MAPR" or "interest" factor into that definition of "consumer credit."

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

users who open a DDA account choose to request discretionary overdrafts.  Others do not.  Dave users who enroll for access to the suite of services the fee covers pay subscription fees to Dave regardless.  Therefore, subscription fees are "of a type payable in a comparable cash transaction" and are not finance charges (subscription fees are also therefore not "a condition of" or "incident to" the extension of credit, however the latter term is defined).

TILA and MLA are sophisticated regulatory regimes.  The Board, the Department of Defense, and the Consumer Financial Protection Bureau, among others, have all promulgated extensive regulations.  Plaintiffs' arguments ignore these clear directives, beseeching the Court to substitute its views for the expertise of the agencies in charge of promulgating and enforcing these regulations, thereby undermining the rulemaking process.  The Court should decline.  The prevailing regulatory regime leaves only one conclusion: none of the four fees are "finance charges."

**C.**    **Plaintiffs Have Not Plausibly Alleged that Defendants are "Creditors" Under TILA.**

TILA only applies to "creditors": "a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required." 15 U.S.C. 1602(g); Mot. at 11.  Plaintiffs do not allege that ExtraCash is payable in more than four installments (it is not).  And, as discussed, *supra*, none of Defendants' fees are finance charges.  Therefore, Plaintiffs have failed to adequately allege a TILA claim.

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

### D.    Plaintiffs' All-Or-Nothing Arbitration Argument Misstates the Law; Even if the Court Declines to Order Arbitration of MLA Claims, Any Surviving TILA or PLA Claims Should be Compelled to Arbitration.

Plaintiffs want to bootstrap their MLA claim to keep everything—including claims clearly subject to arbitration—before the court.  The law does not permit them to do so.[15]  There is no FAA exception for TILA and PLA claims.  And even if the Court determines that MLA's arbitration bar applies, at the very least, Plaintiffs' TILA and PLA claims should be severed and compelled to arbitration.

Plaintiffs' opposition on this point rests heavily on a misplaced attempt to distinguish *Espin v. Citibank, N.A.*, 126 F.4th 1010, 1014–15 (4th Cir. 2025).  In *Espin*, the court remanded and instructed the lower court to compel arbitration of all claims except the MLA claims, which the court found required further analysis.  *Id*. Plaintiffs turn *Espin* on its head, arguing that compelling arbitration of any claim is improper where a court requires additional analysis of an MLA claim.  Opp'n at 21. Not so.  *Espin* clearly stands for the principle that, even if an MLA claim may not be arbitrated (or even if some of the claims demand further analysis as to whether they are subject to arbitration), the court may nonetheless compel the non-MLA claims to arbitration.  *Id*.  Indeed, any claim may be severed and proceed separately.  *See Acevedo-Garcia v. Monroig*, 351 F.3d 547, 558–59 (1st Cir. 2003) (citing Fed. R.

---

[15] It would be also be inequitable as a factually matter to bootstrap MLA claims to preclude arbitration of TILA claims.  Less than 1% of the adult population of the United States serves in the military.  *See* Defense Department Report Shows Decline in Armed Forces Population While Percentage of Military Women Rises Slightly, Department of Defense, Nov. 6, 2023, https://www.war.gov/News/Releases/Release/article/3580676/defense-department-report-shows-decline-in-armed-forces-population-while-percen/ (last accessed, Sept. 11, 2025); Population Under Age 18 Declined Last Decade, U.S. Census Bureau, Aug. 12, 2021, https://www.census.gov/library/stories/2021/08/united-states-adult-population-grew-faster-than-nations-total-population-from-2010-to-2020.html (last accessed, Sept. 11, 2025).  Even accounting for servicemembers' dependents, the general population—all of whom are covered by TILA— would dwarf potential class members covered by MLA.  Refusing to compel arbitration of TILA claims would undermine the "liberal federal policy" in favor of arbitration.  *See supra*.

Civ. P. 21; 9 Charles Wright & Miller, *Federal Practice and Procedure* § 2387 (1971)).  And courts routinely compel certain claims to arbitration, while retaining jurisdiction over other claims.  *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) (the Supreme Court reversed the denial of a motion to compel arbitration where defendant had filed a motion to sever and compel arbitration of state law claims, but did not seek arbitration of federal securities claims).[16]

There is simply no basis for Plaintiffs' contention that any surviving TILA class and PLA class claims must stay in federal court even if the MLA claims may not be compelled to arbitration.  Nor have Plaintiffs cited any.  The TILA and PLA classes include members not covered by MLA and who therefore have no colorable grounds to sidestep their agreement to arbitrate.  These putative class members' claims have no business being litigated before this Court.

Accordingly, even if the Court finds that the MLA claims are not subject to the parties' agreement to arbitrate, the TILA and PLA claims should be severed and compelled to arbitration.

### E.   If the Court Declines to Compel the PLA Claim to Arbitration, the Court Should Dismiss It, Because Plaintiffs do not State a Claim.

PLA's statutory text is dispositive—and fatal to Plaintiffs' PLA claim.  So, once again, Plaintiffs ask the Court to ignore clear statutory text.  Whether or not PLA defines interest "broadly," as Plaintiffs contend, all of the fees at issue here, including overdraft fees, are explicitly excluded from the usury or PLA statute.  Plaintiffs' PLA claims should be compelled to arbitration.  *See infra*.  But if they are not, they should be dismissed outright.

---

[16] *Moss* suggests that *Espin* does not apply where the allegations arise from the same factual nucleus. *Moss*, 2025 WL 2592265 at *5.  But nothing in *Espin* supports that conclusion.  Indeed, in *Espin*, Plaintiffs proposed a single national military class comprised of individuals alleging MLA, TILA, and other claims.  *Espin*, 126 F.4th at 1015; Complaint, *Espin v. Citibank*, 22 CV 383, Dkt. No. 1 at 5 (E.D.N.C. September 22, 2022).  The appeals court remanded for the district court to compel arbitration of the non-MLA claims.  *Id*. at 1013–15.  And here, even if the court determines that the TILA and MLA claims are too similar to sever, the PLA claim arises under an entirely different statutory scheme and relies on different factual and legal determinations.

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

The first case Plaintiffs cite, *SunTrust Bank v. Bickerstaff*, 913 S.E.2d 51 (Ga. Ct. App. 2025), says as much. The *SunTrust* court held that the lower court erred in not granting summary judgment to the bank because, post April 2014, overdraft fees were clearly excluded by statute from the definition of interest. *Id*. at 59. Plaintiffs leave out this key fact. And the other case Plaintiffs cite, *Synovus Bank v. Griner*, 739 S.E.2d 504, 511 (Ga. Ct. App. 2013), which Plaintiffs present as good law, was vacated after the Georgia Department of Banking and Finance issued an Opinion in 2013, "which declares that to provide parity with national banks, overdraft fees imposed by state-chartered banks in connection with deposit accounts are not subject to Georgia's usury laws." *Synovus Bank v. Griner*, No. S13C1264, 2013 Ga. LEXIS 838, at *1 (Oct. 7, 2013). Evolve imposes overdraft fees and offered users the option of adding tips and paying expedited transfer fees. *See* Dkt. No. 44-4 at 56, 58-59; Dkt. No. 44-13 at 240; Dkt. No. 44-14. And Evolve is a Georgia-charted bank offering deposit accounts to ExtraCash users. The usury statute excludes overdraft fees charged by financial institutions. O.C.G.A. § 7-4-18 ("Notwithstanding the foregoing, fees and other charges agreed upon by a financial institution and depositor . . . in a written agreement governing a deposit, share, or other account, including, but not limited to, overdraft and nonsufficient funds. . . shall not be considered interest."). How, then, can Plaintiffs possibly rely on *SunTrust* or *Synovus* to suggest that the ExtraCash overdraft fees violate PLA?

*Tribble v. State*, 597, 80 S.E.2d 711, 714 (Ga. Ct. App. 1954), which held that "[t]he practice of requiring a 'tie-in' sale of insurance or some other commodity which the borrower does not need or desire as a condition precedent to a loan" was usurious, is even further afield. If *Tribble*, which was decided fifty-nine years before Georgia passed PLA, does not sound relevant to this case, that is because it is not. Even Plaintiffs acknowledge that ExtraCash tips and expedited transfer fees were optional. *See* Mot. at 16. There is no *required* "tie-in" here.

Plaintiffs have no other rebuttal to the fact that overdraft fees, optional expedited transfer fees and tips, and subscription fees are excluded from the Georgia usury statute.

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

Nor can they rebut the recent Georgia Attorney General Opinion, which concludes that "a flat, one-time instant transfer fee that does not involve a time value of money calculation would likely not constitute 'interest' under Georgia's usury law."  Ga. Att'y Gen., Unofficial Opinion, U2024-1 (Dec. 6, 2024).[17]  None of the alleged fees involve a time value of money calculation.  Therefore, none of the alleged fees are interest.

In a last-ditch effort, Plaintiffs attempt to argue that Defendants are subject to the usury law because they collect "four separate types of fees."  The number of potential fees is not relevant whatsoever to the usury law.  The four ExtraCash fees alleged in the Complaint are each exempt from the usury law.  That is dispositive, because products exempted by the usury law are not subject to PLA.  *See* O.C.G.A. § 16-17-2(a)(1)(E).  The court should not ignore the clear statutory exemptions and Attorney General guidance.  Extra Cash is not subject to PLA.

Lastly, Plaintiffs have not addressed Defendants' arguments that the PLA claims do not apply to Evolve.  Plaintiffs address only "Dave" in their PLA arguments, seemingly conceding that PLA does not apply to Evolve.  Plaintiffs have therefore waived their PLA claim against Evolve, and those claims should be dismissed. *See supra* at 3.

## III.   CONCLUSION

For the foregoing reasons, the Court should order Plaintiffs to submit their individual claims for arbitration, dismiss the MLA, TILA, and PLA class claims, and stay the civil action pending completion of the arbitration.  In the alternative, if the Court determines that the Arbitration Provision is not enforceable as to MLA claims by Covered Members' and their dependents, the Court should compel Plaintiffs' TILA and PLA claims to arbitration and dismiss the TILA and PLA class claims.  And if the Court denies Defendants' motion to compel arbitration in its entirety, and retains jurisdiction, the claims should be dismissed under Rule

---

[17] https://law.georgia.gov/opinions/u2024-1.

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

12(b)(6) because Defendants are not creditors offering consumer credit subject to finance charges and Defendants' fees are not subject to PLA.

Dated September 11, 2025                          Respectfully submitted.

                                                 By: /s/ *Derek E. Wetmore*
                                                 Derek E. Wetmore

                                                 DEREK E. WETMORE (SB# 291600)
                                                 derekwetmore@paulhastings.com
                                                 PAUL HASTINGS LLP
                                                 101 California Street, 48th Floor
                                                 San Francisco, CA 94111
                                                 Telephone: (415) 856-7000
                                                 Facsimile: (415) 856-7100

                                                 ALLYSON B. BAKER (*pro hac vice*)
                                                 allysonbaker@paulhastings.com
                                                 MEREDITH L. BOYLAN (*pro hac vice*)
                                                 meredithboylan@paulhastings.com
                                                 PAUL HASTINGS LLP
                                                 2050 M Street, NW
                                                 Washington, DC 20036
                                                 Telephone: (202) 551-1700
                                                 Facsimile: (202) 551-1705

                                                 MARGARET SHIELDS (*pro hac vice*)
                                                 margaretshields@paulhastings.com
                                                 PAUL HASTINGS LLP
                                                 200 Park Avenue
                                                 New York, NY 10166
                                                 Telephone: (212) 318-6334
                                                 Facsimile: (212) 319 4090

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Dave Inc. and Evolve Bank & Trust, certifies that this brief contains 6,447 words, which complies with the word limit in L.R. 11-6.2.

Dated September 11, 2025                    /s/ *Derek E. Wetmore*
                                           Derek E. Wetmore

REPLY ISO DEFS' MTD CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION, OR FOR ALTERNATIVE RELIEF