## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | 2:25-cv-04029-MRA-MBK | Date | December 12, 2025 |
|---|---|---|---|
| Title | *Michael Russell et al. v. Dave Inc. and Evolve Bank & Trust* | | |

| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |
|---|---|

| Melissa H. Kunig | None Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:**     **(IN CHAMBERS) ORDER DENYING MOTION TO DISMISS CLASS CLAIMS AND STAY INDIVIDUAL CLAIMS IN FAVOR OF ARBITRATION [43]**

Before the Court is Defendants' Motion to Dismiss Class Claims and Stay Individual Claims in Favor of Arbitration, or For Alternative Relief. ECF 43. The Court read and considered the moving, opposing, and reply papers and held a hearing on December 8, 2025. ECF 68. For the reasons stated herein, the Court **DENIES** the Motion.

## I.     BACKGROUND

Plaintiffs Michael Russell, Joseph Preston, and James Tosches (collectively, "Plaintiffs") filed this action on behalf of themselves and all others similarly situated against Defendants Dave, Inc. ("Dave") and Evolve Bank & Trust ("Evolve") (collectively, "Defendants"), alleging that Defendants engaged in predatory lending practices that violate the Military Lending Act, 10 U.S.C. § 987, *et seq.* ("MLA"), the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), and the Georgia Payday Loan Act ("PLA"), O.C.G.A. § 16-17-2, *et seq.*

### A.     Plaintiffs' Allegations

Dave and Evolve engage in payday lending through an earned wage access ("EWA") product. ECF 33 ¶ 2. EWAs provide workers, before their payday, with a portion of their earned but unpaid wages, which are then repaid via automated withdrawal from the consumer's bank account. *Id.* ¶ 57.

This case specifically concerns Dave's cash advance EWA product called "ExtraCash," which Dave offers in partnership with Evolve. *Id.* ¶ 5. ExtraCash is a cash advance whereby Dave loans customers funds that are repaid on their next payday. *Id.* ¶ 58. The product is intended to allow borrowers to tap into a "cash reserve" for personal use. *Id.* Dave advertises

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | 2:25-cv-04029-MRA-MBK | Date | December 12, 2025 |
|---|---|---|---|
| Title | *Michael Russell et al. v. Dave Inc. and Evolve Bank & Trust* | | |

the ExtraCash product as "interest-free money." *Id.* ¶ 62. To access the ExtraCash product, users must create an account, provide personal information about themselves, connect a bank account to the Dave app, sign up for monthly fees, and pre-authorize Dave to assess fees and collect repayment of borrowed funds. *Id.* ¶ 122. When users sign up for an ExtraCash account, they agree to Dave's Terms of Use, which includes a provision that any dispute between the user and Dave shall be submitted to arbitration unless the user sends an opt-out notice within 60 days. ECF 44-2 at 13–15.

Dave allegedly charges four types of fees in connection with the ExtraCash product: (1) expedited fees, which are charged to provide instant access to loan funds, *id.* ¶¶ 65–74, (2) subscription charges, which are monthly fees Dave charges users to be eligible to apply for Dave ExtraCash loan, *id.* ¶¶ 75–79, (3) "tips," which serve no purpose whatsoever to Dave's customers, *id.* ¶¶ 80–103, and (4) overdraft service fees, which are mandatory fees applied to users to access an ExtraCash advance, *id.* ¶¶ 104–107. Plaintiffs refer to these fees collectively as "finance charges." *Id.* ¶ 108. Plaintiffs allege that when the various finance charges are considered, the average APR for an ExtraCash loan is 329%. *Id.* ¶ 110.

Plaintiffs allege that Defendants attempted to structure ExtraCash as an "overdraft service" to evade consumer protection laws. *Id.*¶¶ 5, 7. Dave advertises the ExtraCash product as a vehicle for short-term cash advances. *Id.* ¶¶ 154–55. Plaintiffs allege that ExtraCash deposit accounts need not contain any balance at all, and they do not come with any debit card, checks, bill pay, or other mechanism that typically triggers an overdraft fee. *Id.* ¶¶ 166–67. Users who request an ExtraCash advance must authorize Dave to automatically withdraw the advance from their connected bank account or debit card, which Dave schedules to be withdrawn around the borrower's next pay day. *Id.*¶ 139. Defendants perform extensive underwriting before issuing the cash advances, and users pre-authorize Defendants to collect repayment through linked bank accounts. *Id.* ¶¶ 120, 139. Plaintiffs describe a user's process for obtaining a cash advance to illustrate that "it is nothing more than a disguised loan." *Id.* ¶¶ 160–164.

Plaintiffs are active-duty service members who are "Covered Members" under the MLA. *Id.* ¶ 8; *see* 12 C.F.R. § 232.3(g). Plaintiffs each obtained an ExtraCash advance from Dave and used the cash advances for personal, family, or household purposes. *Id.* ¶¶ 184–85. Plaintiffs allege they were charged various finance charges and APR associated with various advances. For example, between August 8, 2024, and August 13, 2024, Plaintiff Russell obtained a $225 cash advance and was charged a $11.25 express fee and $11.25 tip for the five-day loan period, which yielded an APR of 730%. *Id.* ¶ 187. Between February 10, 2025, and February 12, 2025, Plaintiff Tosches received a $115 cash advance and was charged a $5.75 overdraft fee and $1.72 express fee for the two-day loan period, which yielded an APR of 1,185%. *Id.* ¶ 189.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04029-MRA-MBK | Date | December 12, 2025 |
|----------|------------------------|------|-------------------|
| Title | *Michael Russell et al. v. Dave Inc. and Evolve Bank & Trust* | | |

Plaintiffs allege that Defendants violate the MLA by using the ExtraCash product to charge Covered Members a military annual percentage rate ("MAPR") in excess of the MLA's legal limit. *Id.* ¶ 9. Plaintiffs allege that Defendants violate the MLA by: (1) charging interest above the 36% MAPR cap, (2) failing to provide any credit disclosures required by the MLA, (3) including a purported class action ban and waiver of jury trial, (4) including a mandatory binding arbitration clause, and (5) using a method of access to a deposit, savings, or other financial account maintained by the borrower as security for the obligation. *Id.* ¶ 10. Plaintiffs further allege that the ExtraCash violates the PLA by extracting charges from Georgia consumers that yield APRs drastically exceeding the legal limit, and that Defendants violated the TILA by failing to make certain required disclosures regarding interest rates. *Id.* ¶¶ 11–12.

Plaintiffs seek to represent three proposed classes:

**MLA Class**: All Covered Members and dependents of Covered Members who entered into an agreement with Defendants to use their ExtraCash (or substantially similar) product, in which Defendants were paid a finance charge (including, without limitation, an express fee, subscription charge, tip, or overdraft fee).

**TILA Class**: All Covered Members, dependents of Covered Members, and Georgia residents in the United States that entered into an agreement with Defendants to use their ExtraCash (or substantially similar) product, in which Defendants were paid a finance charge (including, without limitation, an express fee, subscription charge, tip, or overdraft fee).

**Georgia Class**: All Georgia residents that entered into an agreement with Defendants to use their ExtraCash (or substantially similar) product, in which Defendants were paid a finance charge (including, without limitation, an express fee, subscription charge, tip, or overdraft fee).

*Id.* ¶ 192.

### B.    Procedural History

On April 1, 2025, Plaintiffs filed a Complaint against Defendants in Los Angeles County Superior Court, seeking damages and equitable relief for violations of the MLA and TILA. ECF 1-3. On May 5, 2025, Defendants removed the case to federal court based on federal question

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04029-MRA-MBK | Date | December 12, 2025 |
|---|---|---|---|
| Title | *Michael Russell et al. v. Dave Inc. and Evolve Bank & Trust* | | |

jurisdiction under 28 U.S.C. § 1331.  ECF 1.

On June 11, 2025, Defendants filed a Motion to Dismiss Class Claims and Stay Individual Claims in Favor of Arbitration.  ECF 26.  Rather than oppose the motion, Plaintiffs filed the operative First Amended Complaint ("FAC"), which added a claim under the Georgia PLA.  ECF 33.  Defendants then renewed their Motion to Dismiss Class Claims and Stay Individual Claims in Favor of Arbitration (the "Motion").  ECF 34.  Plaintiffs opposed the Motion.  ECF 46.  The Court stayed discovery pending resolution of the Motion.  ECF 48.

The Court held a hearing on the Motion on December 8, 2025.  ECF 68.  At the hearing, counsel for Plaintiffs represented that Plaintiffs intended to proceed in this matter only as to the MLA claims.

## II.    LEGAL STANDARDS

The Federal Arbitration Act ("FAA") provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). "Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)); *see also Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) ("A party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue.") (quoting *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)).

## III.    DISCUSSION

Defendants argue that when they signed up for the ExtraCash service, Plaintiffs agreed to arbitration provisions that preclude class actions, and their claims must therefore be arbitrated on an individual basis.  ECF 43-1 at 9.  Defendants ask the Court to order Plaintiffs to arbitrate their individual claims, dismiss the class claims, and stay this action pending completion of arbitration.

Plaintiffs do not contest that they agreed to the Dave's Terms of Service ("TOS") when

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04029-MRA-MBK | Date | December 12, 2025 |
|---|---|---|---|
| Title | *Michael Russell et al. v. Dave Inc. and Evolve Bank & Trust* | | |

they signed up for the ExtraCash service.[1]  Nor do they contest the elements that generally determine whether an online contract is enforceable under California law—*i.e.*, that they had actual or constructive notice of the agreement and they manifested mutual assent.  *See Oberstein v. Live Nation Ent. Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023).  Plaintiffs argue that the MLA nevertheless prohibits arbitration of their claims.

The MLA renders it "unlawful for any creditor to extend consumer credit to a covered member or a dependent of such a member with respect to which . . . the creditor *requires* the borrower to submit to arbitration . . . ."  10 U.S.C. § 987(e)(3) (emphasis added).  A separate provision of the MLA, appearing in the "Penalties and remedies" section of the statute, provides that, "[n]otwithstanding the [FAA], or any other Federal or State law, rule, or regulation, no agreement to arbitrate any dispute involving the extension of consumer credit shall be enforceable against any covered member or dependent of such a member . . ."  *Id.* § 987(f)(4).  Defendants argue that the MLA does not render its arbitration agreements unenforceable because (1) the MLA does not apply to voluntary arbitration agreements that allow users to opt-out, (2) the question of arbitrability has been delegated to an arbitrator, and (3) the ExtraCash product does not involve the extension of consumer credit.

> **A.    10 U.S.C. § 987(f)(4) Applies to All Arbitration Agreements, Including Those That Allow Users to Opt Out.**

Defendants argue that optional arbitration clauses that allow users to opt-out, like the one signed by Plaintiffs here, are not covered by the MLA, because section 987(e)(3) applies only where the borrower is *required* to submit to arbitration.  ECF 52 at 11.  Defendants argue that section 987(f)(4), which appears in the "[p]enalties and remedies" section of the statute, cannot be interpreted to void an optional arbitration agreement that would not be unlawful under section

---

[1] Defendants filed a Request for Judicial Notice in connection with the Motion, asking the Court to take judicial notice of Dave's TOS, the ExtraCash Account Agreement, Plaintiffs' account statements, and the ExtraCash Fee Schedule.  ECF 44.  The Court finds it appropriate to take judicial notice of the terms of service, which contain the arbitration agreement at issue. *Keller v. Chegg, Inc.*, No. 22-CV-06986-JD, 2023 WL 5279649, at *2 n.2 (N.D. Cal. Aug. 15, 2023) ("Judicial notice of the arbitration agreements is perfectly appropriate for a motion to compel arbitration.").  However, because the remaining documents sought to be noticed are irrelevant and unnecessary to the disposition of this Motion, the Court **DENIES** Defendants' Request for Judicial Notice as to those other documents.  *See Santa Monica Nativity Scenes Cmte. v. City of Santa Monica*, 784 F.3d 1286, 1298 n.6 (9th Cir. 2015) (denying requests for judicial notice "on the grounds that the documents to be noticed are irrelevant").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04029-MRA-MBK | Date | December 12, 2025 |
|---|---|---|---|
| Title | *Michael Russell et al. v. Dave Inc. and Evolve Bank & Trust* | | |

987(e)(3). *Id.* at 12. According to Defendants, Plaintiffs must first prove a violation of the MLA under section 987(e)(3)—*i.e.*, that they were required to submit to arbitration—before they may avail themselves of the remedy provided by section 987(e)(4)—*i.e.*, the unenforceability of the arbitration agreement. *Id.* A different reading, Defendants contend, would "render inoperative MLA's structure." *Id.* At the hearing on the Motion, Plaintiffs argued that every case to address this issue has determined that the MLA's prohibition on arbitration does not turn on the voluntariness of the agreement. The Court agrees with Plaintiffs and finds that these MLA provisions are not in tension but instead serve different purposes.

Both parties rely on *Consumer Financial Protection Bureau v. MoneyLion Technologies*, __ F. Supp. 3d __, 2025 WL 8963674 (S.D.N.Y. March 24, 2025), in support of their positions. Defendants rely on *MoneyLion* for the proposition that an arbitration clause does not violate section 987(e)(3) if borrowers are afforded a period in which to opt out of binding arbitration. *MoneyLion*, 2025 WL 893684, at *22. In Defendants' view, *MoneyLion* instructs that, where an arbitration clause is optional, there is no violation of the MLA, and where there is no violation of the MLA, section 987(f)(4) cannot be invoked to void those optional agreements.

*MoneyLion*, however, rejected the very position Defendants take here, and the Court is struck by Defendants' mischaracterization of the decision at the hearing. In *MoneyLion*, the court acknowledged that, "[b]y its terms, Section 987(f)(4) applies to *any* contractual provision that purports to bind a military borrower to arbitration, regardless of whether the process by which that provision became an effective part of the contract was voluntary or not." *Id.* at *23. The court acknowledged what it considered a tension between the scope of section 987(e)(3), which applies only to mandatory arbitration provisions, and the scope of section 987(f)(4), which applies to *all* arbitration provisions, but rejected the argument that such tension produced an "absurd" result. *Id.* The court explicitly recognized that "Section 987(e)(3) therefore appears to allow what Section 987(f)(4) renders unenforceable"—a voluntary arbitration agreement—but found that this arguable inconsistency demonstrated, at most, that "Congress simply failed to appreciate the effect of the different language that it used in Section 987(e)(3) compared to Section 987(f)(4)." *Id.* at *24 (citation modified). Thus, "[r]egardless of what Section 987(e)(3) prohibits, Section 987(f)(4) independently renders all arbitration agreements unenforceable as against military borrowers, guaranteeing that military borrowers who commence legal action will still have their day in court notwithstanding the voluntariness of any arbitration clause." *Id.*

Plaintiffs also point to *Revell v. Grant Money LLC*, No. 25-cv-05994-TLT, 2025 WL 3167318 (N.D. Cal. Nov. 5, 2025), which held that a 30-day opt out period did not exempt an arbitration agreement "from being unenforceable against Plaintiff under § 987(f)(4) of the MLA." *Id.* at *9. In *Revell*, the court observed that section 987(f)(4) did not contain the "'require[d]'

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | 2:25-cv-04029-MRA-MBK | Date | December 12, 2025 |
|----------|------------------------|------|-------------------|
| Title | *Michael Russell et al. v. Dave Inc. and Evolve Bank & Trust* | | |

qualifier" appearing in section 987(e)(3), and it concluded that the two provisions "accomplish different purposes." *Id.* at \*8. Citing *MoneyLion*, the court opined that "the fact that § 987(e)(3) does not apply to opt-out arbitration agreements does not undermine the broad prohibition on *enforcing* arbitration agreements in § 987(f)(4)." *Id.*

The Court finds the logic and reasoning of *MoneyLion* and *Revell* persuasive here. Section 987(e)(1)-(7) prohibits different types of conduct—not only mandatory arbitration provisions— and Section 987(f)(5)(e) expressly allows servicemembers to bring an action for civil liability in district court for violations of the MLA. Section 987(f)(4) makes clear that "no agreement to arbitrate any dispute involving the extension of consumer credit shall be enforceable against any covered member." That provision means that, even if an arbitration provision does not violate section 987(e)(3) by virtue of being mandatory, a servicemember can still bring an action to challenge *other* violations of the MLA or the very voluntariness of the arbitration provision. In other words, that a voluntary arbitration provision does not facially violate the MLA under section 987(e)(3) does not mean that a servicemember cannot avail himself of the remedies available under section 987(f)(4) for other violations of the MLA, so long as the "dispute involv[es] the extension of consumer credit," as Plaintiffs allege here. Indeed, Plaintiffs allege that Defendants violate provisions of the MLA *other* than section 987(e)(3)—for example, by "using a method of access to a deposit, savings, or other financial account maintained by the borrower as security for the obligation, in violation of 10 U.S.C. § 987(e)(5)." ECF 33 ¶ 215.

This conclusion is further supported by *Steines v. Westgate Palace, LLC*, 113 F.4th 1335 (11th Cir. 2024). In *Steines*, the Eleventh Circuit held that section 987(f)(4) reflected Congress's clear intent to "over[ride] the FAA for *all* disputes." *Id.* at 1344 (emphasis added). Defendants seek to distinguish *Steines* on the grounds that *Steines* concerned a "mandatory" arbitration agreement, not an optional agreement. But the reasoning in *Steines* was not limited in the way Defendants suggest. The Eleventh Circuit in *Steines* did not solely rely on the language in section 987(e)(3), which "render[s] any mandatory arbitration agreement nugatory." *Steines*, 113 F.4th at 1343. To the contrary, it recognized that "the language of the MLA goes further and makes the point even clearer," including in section 987(f)(4), which "explicitly overrides § 2 of the FAA." *Id.* at 1344. Thus, the Court continued, "[b]ecause the FAA has been unmistakably overridden, both the delegation clause and the underlying arbitration agreement at issue in this case are unenforceable." *Id.* The "mandatory" nature of the underlying arbitration was not relevant to the court's decision in *Steines*, and so the fact that Defendants' arbitration provisions contain an opt-out provision has no bearing on the MLA's displacement of the FAA in the instant dispute. Put simply, section 987(e)(3) does not supplant or otherwise limit the remedies that the MLA provides to servicemembers and their dependents to protect them from predatory lending tactics. *See Huntco Pawn Holdings, LLC v. U.S. Dep't of Def.*, 240 F. Supp. 3d 206, 211 (D.D.C.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04029-MRA-MBK | Date | December 12, 2025 |
|---|---|---|---|
| Title | *Michael Russell et al. v. Dave Inc. and Evolve Bank & Trust* | | |

2016) (recognizing that MLA was enacted in response to Department of Defense report detailing predatory lending practices "that undermine[ ] military readiness, harm[ ] the morale of troops and their families, and add[ ] to the cost of fielding an all-volunteer fighting force").

### B.    The Delegation Clause in the Agreement is Unenforceable Under the MLA.

Defendants also argue that the question of whether the MLA applies—*i.e.*, whether the claims are subject to arbitration—is a question that the parties delegated to an arbitrator.  ECF 43-1 at 16–17.  On this issue, the Court again agrees with the Eleventh Circuit's reasoning in *Steines*.  There, the party seeking to enforce the arbitration agreement argued, as Defendants argue here, that the Court "must consider the delegation clause as a standalone contract, independent of the underlying agreements to arbitrate or extend consumer credit."  *Id.* at 1344. The Eleventh Circuit rejected that argument, reasoning that the clear language of "the MLA overrode the FAA for all disputes, including those involving the arbitrability question itself."  *Id.* Because the MLA "displaces the FAA altogether," the delegation clause was unenforceable.  *Id.* at 1345.   At least one court in the Ninth Circuit has relied on *Steines* in a case similar to this one to conclude that the MLA rendered a delegation clause unenforceable.  *Moss v. Cleo AI Inc.*, No. C25-879-MLP, 2025 WL 2592265, at *2 (W.D. Wash. Sept. 8, 2025).   For the reasons explained above, Defendants' effort to distinguish *Steines* by pointing to the optional or voluntary nature of their arbitration agreement is unavailing.

### C.    ExtraCash Advances Constitute "Credit."

Finally, Defendants argue that if this Court takes up the arbitrability question, the MLA does not apply or render the agreements to arbitrate unenforceable because the ExtraCash transactions do not constitute "credit" within the meaning of Regulation Z.  *Id.* at 18.   To resolve this issue, the Court must consider whether Plaintiffs have sufficiently alleged that this dispute involves the extension of "consumer credit" within the meaning of the MLA, such that the arbitration provision is unenforceable under 10 U.S.C. § 987(f)(4).

"Consumer credit means credit offered or extended to a covered borrower primarily for personal, family, or household purposes, and that is . . . [s]ubject to a finance charge."  32 C.F.R. § 232.3(f).  "Credit," in turn, refers to "the right granted to a consumer by a creditor to defer payment of debt or to incur debt and defer its payment."  *Id.* § 232.3(h).  According to the Consumer Financial Protection Bureau's official interpretation of Regulation Z, the regulations implementing the TILA, "credit" includes cash advances provided in exchange for the consumer's authorization to debit their deposit account at a later date.   12 C.F.R. pt. 1026, Supp. I, Paragraph

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 2:25-cv-04029-MRA-MBK | Date | December 12, 2025 |
|---|---|---|---|
| Title | *Michael Russell et al. v. Dave Inc. and Evolve Bank & Trust* | | |

2(a)(14) Credit, ¶ 2 ("Payday loans; deferred presentment").[2]

As alleged, the ExtraCash product satisfies the definition of credit because it allows Plaintiffs to "defer payment of debt or to incur debt and defer its payment." *See* ECF 33 ¶ 139. The Court sees no reason to depart from the growing chorus of decisions that have concluded that similar cash advance programs constitute "credit" within the meaning of the TILA. *See, e.g., Orubo v. Activehours, Inc.*, 780 F. Supp. 3d 927, 935–36 (N.D. Cal. 2025); *Johnson v. Activehours, Inc.*, No. 1:24-CV-02283-JRR, 2025 WL 2299425, at *8 (D. Md. Aug. 8, 2025); *Moss*, 2025 WL 2592265, at *3.

The Court next considers whether the ExtraCash advances are subject to a "finance charge." The MLA defines "finance charge" by reference to TILA, which provides that the finance charge in "any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). A charge need not be mandatory to be "incident to the extension of credit" and qualify as a "finance charge" under TILA. *See Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 240–41 (2004) (explaining that TILA requires "some necessary connection" between a fee and the extension of credit). "A connection between the charge and the extension of credit is therefore sufficient." *Moss*, 2025 WL 2592265, at *4. Plaintiffs identify four types of fees allegedly charged by Defendants that qualify as "finance charges": (1) overdraft fees, (2) tips, (3) Express Fees, and (4) subscription fees.[3] The Court addresses each in turn.

### 1.   *Overdraft Fees*

Plaintiffs allege that the "overdraft service fees" are mandatory fees applied to users to access an ExtraCash advance. ECF 33 ¶ 104. The overdraft service fee is a 5% fee on the advance, with a $5 minimum and $15 cap. *Id.* ¶ 105. According to Plaintiffs, Defendants only

---

[2] The MLA generally incorporates TILA's definition of "consumer credit." 10 U.S.C. § 987(i)(6).

[3] Plaintiffs concede that the monthly subscription fees would not be considered "finance charges" within the meaning of Regulation Z, though they maintain that such fees must be "included in the military APR calculation" under the MLA. ECF 46 at 21 n.7. The question before the Court is only whether the ExtraCash product involves "finance charges" within the meaning of the TILA and MLA, such that the MLA renders the arbitration agreement unenforceable. The Court therefore need not consider whether subscription charges are finance charges or whether such charges count toward the MAPR under 32 C.F.R. § 232.4(c)(1)(iii).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04029-MRA-MBK | Date | December 12, 2025 |
|---|---|---|---|
| Title | *Michael Russell et al. v. Dave Inc. and Evolve Bank & Trust* | | |

began charging this fee after its fee practices were challenged by the FTC and DOJ.  *Id.* ¶ 107.

Defendants argue that the overdraft service fees do not constitute finance charges because Regulation Z specifically excludes from the definition of finance charges "[c]harges imposed by a financial institution for paying items that overdraw an account, unless the payment of such items and the imposition of the charge were previously agreed upon in writing."   12 C.F.R. § 226.4(c)(3).   According to Defendants, discretionary overdraft fees like the ones they charge are not subject to any prior written agreement, and are therefore not subject to Regulation Z.   ECF 43-1 at 19–21.   In response, Plaintiffs argue that the overdraft fees *are* subject to prior written agreement, and the substance of the transaction does not resemble a "bona fide" overdraft charge. ECF 46 at 18–20.

Defendants liken this case to *In re Washington Mutual Overdraft Protection Litigation*, 539 F. Supp. 2d 1136 (C.D. Cal. 2008), where the court concluded that charges imposed for paying courtesy overdrafts did not satisfy the definition of "finance charges" under TILA.   That case involved the defendant's use of an "Overdraft Limit Provision," which granted the defendant discretion to "pay checks, transfers and withdrawals presented for payment against [an] account, despite insufficiency of good funds in the account, up to the amount of the Overdraft Limit," subject to fees.   *Id.* at 1142–43.   The *Washington Mutual* court concluded that "non-written-agreement overdraft programs" like the one at issue in that case were not covered by TILA and Regulation Z.   *Id.* at 1148–49.

Here, however, Plaintiffs allege that ExtraCash advances are memorialized in written agreements prior to Defendants issuing the money.   ECF 33 ¶¶ 164, 168.   Plaintiffs specifically describe how, prior to receiving an ExtraCash advance, Defendants "approve" the customer to receive the advance, and in exchange, the user agrees to take and later repay the advance in addition to fees, including the overdraft service fee.   ECF 46 at 18.   In arguing that no written agreement governing the overdraft exists, Defendants mistakenly rely on language in the ExtraCash Account Agreement, which users enter *prior* to entering any particular ExtraCash transaction.   ECF 43-1 at 16 n.9.   Although the Account Agreement may reserve Defendants' discretion as to whether to approve overdrafts and how to set a customer's "Advance Limit," Plaintiffs allege that each ExtraCash advance is governed by subsequent agreements with Defendants, whereby for each "overdraft" (*i.e.,* for each cash advance), Defendants promise to pay the overcharge in exchange for the user's promise to pay the overdraft fee.   ECF 33 ¶ 168. Thus, the exemption for overdraft fees described in 12 C.F.R. § 226.4(c)(3) does not apply because Plaintiffs have sufficiently alleged that the terms governing the payment of ExtraCash advances are agreed upon in writing before the advances are issued.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04029-MRA-MBK | Date | December 12, 2025 |
|---|---|---|---|
| Title | *Michael Russell et al. v. Dave Inc. and Evolve Bank & Trust* | | |

The Court is mindful that in determining whether TILA applies, it must "look[ ] past the form of the transactions to their economic substance in deciding whether the Act applie[s]." *Orubo*, 780 F. Supp. 3d at 936 n.5 (quoting *Burnett v. Ala Moana Pawn Shop*, 3 F.3d 1261, 1262 (9th Cir. 1993)).  Notwithstanding Defendants' insistence that ExtraCash is described as an "overdraft" service, the substance of the ExtraCash advances, as alleged, bear more similarity to typical credit arrangements agreed to in writing than the informal "bounce protection" feature described in *Washington Mutual*.  539 F. Supp. 2d at 1147–48.  Indeed, according to CFPB guidance, the exemption for overdraft charges set forth in Regulation Z was directed at "regular demand deposit accounts which carry no credit features and in which a bank may, occasionally, as an accommodation to its customer, honor a check which inadvertently overdraws that account." 89 Fed. Reg. 106768, 106770 (2024).  The practices described in the FAC, whereby Defendants agree in advance to provide ExtraCash in exchange for a promise that the cash be later repaid, in addition to fees, cannot be described as an "accommodation" for an "inadvertent" overdraw on an account.

There is no dispute that the 5% overdraft service fee is "incidental" to the issuance of an ExtraCash advance within the meaning of TILA and Regulation Z, as Plaintiffs allege that the fee is a mandatory fee assessed for every ExtraCash advance.  ECF ¶ 104; *see Orubo*, 780 F. Supp. 3d at 938 (finding "lighting fee" to constitute finance charge because "immediate cash advance product is contingent on payment of fee").  Thus, the Court concludes that the overdraft service fee as alleged constitutes a "finance charge."

### 2.    *Express Fees and Tips*

Defendants argue that optional tips and express fees are not finance charges because they are voluntary fees that are of "a type payable in a comparable cash transaction" that is not covered by Regulation Z.  ECF 43-1 at 21–22; 12 C.F.R. § 226.4(a).

As to tips, Defendants argue that these fees cannot be a "condition of" or "incident to" ExtraCash advances if users can and do receive them without paying any tips.  ECF 43-1 at 23.  But as noted above, "a charge need not be mandatory to be 'incident to the extension of credit' and qualify as a 'finance charge.'"  *Moss*, 2025 WL 2592265, at *4 (citing *Pfenning*, 541 U.S. at 240–41).  Instead, "[a]ll that is required is a connection between the imposition of the charge and the extension of credit."  *Orubo*, 780 F. Supp. 3d at 937.  For that reason, at least two courts have concluded that purportedly voluntary "tips" satisfy the definition of "finance charge" where plaintiffs adequately alleged that the tips were connected to a cash advance product.  *Id.*; *Johnson*, 2025 WL 2299425, at *9.  As in *Orubo*, "[i]t is a would-be borrower's effort to obtain a cash advance that trigger's [Defendants'] solicitation of a tip; [Defendants] users are solicited for a tip,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04029-MRA-MBK | Date | December 12, 2025 |
|---|---|---|---|
| Title | *Michael Russell et al. v. Dave Inc. and Evolve Bank & Trust* | | |

sometimes multiple times, before they can obtain a cash advance; [and] the design of [Defendants'] app makes it difficult for users to obtain an advance without paying a tip."   780 F. Supp. 3d at 938; ECF 33 ¶¶ 80–102.   Thus, even if the tip is not strictly mandatory, it is "inextricably intertwined with obtaining a cash advance."   *Id.*

The same is true for the "express fees."   Defendants cite *Veale v. Citibank F.S.B.*, 85 F.3d 577 (11th Cir. 1996), in which the Eleventh Circuit held that the Federal Express optional mailing fees to expedite the mailing of documents and disbursement of a loan refinancing were not "finance charges" because the consumer could choose not to pay them.   Indeed, Defendants criticize *Orubo*, which concluded that similar "lightning" fees were finance charges, for "ignoring" *Veale*.   ECF 52 at 19.   But *Orubo* relied on *Pfenning*, a Supreme Court case that postdates *Veale* (an out-of-circuit case which is not binding in any event), which "confirmed that 'incident to' means 'connected to.'"   *Orubo*, 780 F. Supp. 3d at 937.; *see also Vickery v. Empower Fin., Inc.*, No. 25-CV-03675-JSC, 2025 WL 2841686, at *7 (N.D. Cal. Oct. 7, 2025) (recognizing that *Veale* improperly relied on incorrect assumption that "incident to" required fee to be "necessary condition").

Defendants argue that the express fees it charges in connection with the ExtraCash product are comparable to fees charged for non-credit products, such as out-of-network ATM fees and fees to expedite settlement of check deposits.   ECF 43-1 at 21–22.   But the Court is not persuaded that an out-of-network ATM fee or fee to expedite settlement of check deposits is sufficiently comparable to the expedite fees described in Plaintiffs' Complaint.   According to Plaintiffs, "[t]he speed of access to funds is an essential and defining aspect of" the ExtraCash product, and the fee must be paid in order to reap the advertised benefits that customers can receive cash "instantly" or "on the spot."   ECF 33 ¶¶ 69, 72.   In other words, a fee to obtain immediate access to a cash advance to be repaid at a later date is not meaningfully comparable to the convenience fees Defendants identify.   And each court that has confronted the question has concluded that expedited fees associated with similar cash advance products are finance charges. *See, e.g., Orubo*, 780 F. Supp. 3d at 938; *Moss*, 2025 WL 2592265, at *4; *Revell*, 2025 WL 367318, at *11; *Vickery*, 2025 WL 2841686, at *7.

The Court therefore concludes that tips and express fees constitute "finance charges."

***

Because Plaintiffs allege that Defendants' ExtraCash product involves the extension of consumer credit subject to a finance charge, the MLA applies to Plaintiffs' Complaint, and the arbitration provision is not enforceable as to the MLA claim.   The Court therefore **DENIES** Defendants' Motion to Compel Arbitration as to the individual MLA claims and **DENIES**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-04029-MRA-MBK | Date | December 12, 2025 |
|---|---|---|---|
| Title | *Michael Russell et al. v. Dave Inc. and Evolve Bank & Trust* | | |

Defendants' Motion to dismiss the MLA class claims.   For the same reasons, the Court **DENIES** Defendants' alternative request to dismiss the MLA claims for failure to state a claim.

### D.    Plaintiffs' Remaining Claims

At the hearing on the Motion, Plaintiffs' counsel represented that Plaintiffs intended to proceed in this action only with the MLA claims.   The Court therefore will not consider the parties' remaining arguments as to the viability of Plaintiffs' TILA and PLA claims.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Class Claims and Stay Individual Claims in Favor of Arbitration, or for Alternative Relief [43] is **DENIED**.

With respect to the Court's stay of discovery, ECF 48, the parties are **ORDERED** to meet and confer regarding pre-trial deadlines and submit a joint worksheet with proposed new deadlines to the Court for its consideration by **December 19, 2025**.

**IT IS SO ORDERED.**

_____ : _____

Initials of Deputy Clerk     mku